HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KA WAI JIMMY LO,

        Plaintiff,

    v.

THE UNITED STATES OF AMERICA,

        Defendant.

Case No. 2:17-cv-01202- RAJ

ORDER

## I.   INTRODUCTION

This matter comes before the Court on Defendant's ("the Government") motion to strike and exclude expert opinions of Sanford Wright, M.D.  Dkt. # 71.  Plaintiff opposes the motion.  Dkt. # 81.  Having reviewed the briefing, record, and relevant law, the Court **GRANTS in part** and **DENIES in part** the motion.

## II.   BACKGROUND

This case arises out of a November 23, 2012, motor vehicle collision involving Plaintiff Ka Wai Jimmy Lo ("Plaintiff") and a United States Postal Service ("USPS") employee.  Dkt. # 71 at 2.  On June 16, 2021, the deadline for disclosing expert witness disclosure and reports, Plaintiff disclosed an expert report by Dr. Sanford Wright, M.D. Dkt. # 71 at 2 (citing Dkt. # 51).  In his report, Dr. Wright diagnosed Plaintiff with the following nine conditions related to the collision:

ORDER – 1

1.  PTSD, anxiety/depression and major depressive order;
2.  Brachial plexopathy;
3.  Cervical radiculopathy;
4.  Complex Regional Pain Syndrome ("CRPS");
5.  L3-4 disc herniation;
6.  Cervical strain;
7.  Minor thoracic strain;
8.  Lumbar strain; and
9.  Labial tear, right hip.

Dkt. # 72-1 at 20.

A month later, Plaintiff produced a rebuttal report from Dr. Wright. *Id.* The Government deposed Dr. Wright on August 3, 2021 and August 12, 2021. *Id.* On August 14, 2021, Plaintiff produced a supplemental report from Dr. Wright. *Id.* Two days later, the Government deposed Dr. Wright for a third time. *Id.*

The Government now moves to strike Dr. Wright's supplemental report regarding the reasonableness and necessity of medical bills and to exclude Dr. Wright's opinions regarding Plaintiff's medical expenses. Dkt. # 71 at 2. The Government also seeks to exclude Dr. Wright's opinions regarding Plaintiff's hip surgery, mental health treatment, CRPS, brachial plexopathy, and the causal connection between Plaintiff's injuries and the collision. *Id.* at 7-13.

### III.  LEGAL STANDARDS

#### A.  Striking Supplemental Expert Opinions

Under Federal Rule of Civil Procedure 26(a)(2), an expert witness must provide a report containing, *inter alia*, "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). Under Federal Rule of Civil Procedure 26(e), a party must timely supplement a disclosure "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made

ORDER – 2

known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1).

Supplemental expert reports that merely attempt "to deepen and strengthen the expert's prior reports" do not fall within the scope of supplemental disclosures under Rule 26(e).  *Lindner v. Meadow Gold Dairies, Inc*., 249 F.R.D. 625, 639 (D. Haw. 2008) (internal citation omitted).  Indeed, Rule 26(e) does not provide a second chance to raise issues that should have been included in an expert's initial report.  *Id.*  Rather, Rule 26(e)'s supplementation "means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure."  *Id.* (citing *Keener v. United States,* 181 F.R.D. 639, 640 (D. Mont. 1998)).

## B.  Legal Standard for Admissibility of Expert Testimony

Under Federal Rule of Evidence 702, "a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify" if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Court "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).  An expert "is permitted wide latitude to offer opinions" based "on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline."  *Id.* at 592.  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  *Id.* at 596.

The Court notes that in a bench trial such as this, in which "the district court sits as the finder of fact, there is less need for the gatekeeper to keep the gate when the

ORDER – 3

gatekeeper is keeping the gate only for himself." *United States v. Flores*, 901 F.3d 1150, 1165 (9th Cir. 2018) (internal citation omitted).  This is because "*Daubert* is meant to protect juries from being swayed by dubious scientific testimony."  *Id.*  When the district court is the factfinder, "the court does not err in admitting the evidence subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702."  *Id.*

## IV.   DISCUSSION

In the pending motion, the Government seeks to exclude Dr. Wright's supplemental report and to strike Dr. Wright's opinions regarding several of Plaintiff's injuries and the causal connection between the injuries and the collision.  The Court will address the report and opinions in turn.

### A.      Dr. Wright's Supplemental Report

The Government alleges that Dr. Wright's supplemental report was an effort "to address the inadequacies [Dr. Wright] perceived in his report based upon the deposition questioning."  Dkt. # 71 at 4.  The Court agrees.  Dr. Wright states that his supplemental report is a "response to questions during [his] deposition" and what he claims are "additionally provided records."  Dkt. # 72-3 at 2.  Except for one medical bill, Dr. Wright's supplemental report does not provide information that was not available at the time his expert report was disclosed.  Indeed, Plaintiff does not dispute that the supplemental report addresses the reasonability and necessity of all medical bills, all but one of which were available to the parties before the first expert report was timely filed.

The rule for supplementation does not "give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report." 249 F.R.D. at 639.  "Nor does Rule 26(e) create a loophole through which a party who submits partial expert witness disclosures, or who wishes to revise her disclosures in light of her opponent's challenges to the analysis and conclusions therein, can add to them to her advantage after the court's deadline for doing so has passed."  *Luke v. Fam. Care &*

ORDER – 4

*Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009).  Plaintiff's statement that Dr. Wright "chose to provide a supplemental report merely in an effort to provide a better answer to the defense, in response to counsel's repetitive inquiries" does not reflect the purpose or fall within the scope of supplementation permitted under, Rule 26.

The Court therefore finds that Dr. Wright's supplemental report is improper, and hereby **STRIKES** it.

### B.      Dr. Wright's Opinions Regarding Plaintiff's Medical Bills

The Government next moves to exclude Dr. Wright's opinion regarding the reasonableness and necessity of medical bills in his properly filed expert report.  Dkt. # 81 at 5.  Dr. Wright states the following:

> Based upon my background, training, education, and experience, and my familiarity with reasonable charges for medical, chiropractic, imaging, and acupuncture charges, it is my opinion on a more probable than not basis that these bills and treatment were reasonable and necessary for the injuries Client sustained in this collision.

Dkt. # 72-1 at 32.

When asked, during his August 12, 2021 deposition, whether he had reviewed any of the medical bills at issue, Dr. Wright responded that he had not.  Dkt. # 72-4 at 54:17-18.  He confirmed that he did not know how much any of Plaintiff's providers charged Plaintiff.  *Id.* at 55:13-18.  When asked about the different rates charged to uninsured patients and those to insured patients, Dr. Wright explained "I just felt that the organizations and individuals involved were very credible.  I never looked at the individual billings."  *Id.* at 55:19-56:1.  The Court finds that Dr. Wright's testimony on the reasonableness and necessity of Plaintiff's medical bills is unfounded based on the fact that he did not look at the medical bills and was unaware of what Plaintiff was charged by his medical providers before Dr. Wright completed his expert report.  Dr. Wright's testimony on this matter is not based on "sufficient facts or data" as required by

ORDER – 5

Rule 702, and the Court finds "that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Dr. Wright's opinions as to the reasonableness and necessity of Plaintiff's medical bills are hereby excluded.

### C.  Dr. Wright's Opinions on Hip Injury and Mental Health Treatment

The Government argues that "Dr. Wright's opinions and testimony regarding Plaintiff's hip surgery and mental health treatment should be excluded because these medical issues are outside his admitted scope of expertise." Dkt. # 71 at 7. The Court agrees. As the Government notes, Dr. Wright is a retired neurosurgeon with expertise in head and spine injuries. *Id.* When asked about Plaintiff's hip injury, specifically, his cam impingement and labral tear, Dr. Wright confirmed that he has no expertise in hip-related injuries. *See* Dkt. # 72-4 at 45:4-10; 46:18-47:2 (stating "[w]ell, it would involve the hip joint. That is not my area of expertise.") Given that, the Court excludes his opinions with respect to Plaintiff's hip injury and treatment as unreliable due to his lack of expertise in the matter.

For the same reasons, the Court excludes Dr. Wright's testimony and opinions on Plaintiff's mental health conditions. As Dr. Wright acknowledged, he has not had any specialized training or expertise in mental health conditions. Dkt. # 72-4 at 57:9-19. He conceded that his diagnosis of Plaintiff's mental health condition was not based on his own testing or application of any scientific methodology, but rather on his adoption of "the remarks of providers in the medical records." *Id.* at 58:2-19. Dr. Wright does not have the scientific or specialized knowledge in the field of mental health to help a trier of fact to understand the evidence, nor is his testimony on these issues "the product of reliable principles and methods." Fed. R. Evid. 702. The Court therefore excludes these opinions.

### D.  Dr. Wright's Opinions on CRPS and Brachial Plexopathy

The Government argues that Dr. Wright's diagnosis regarding Plaintiff's alleged

ORDER – 6

CRPS and brachial plexopathy should be excluded "because his methodology is unreliable and unhelpful to the trier of fact." Dkt. # 85 at 6. Plaintiff does not respond to the Government's argument regarding CRPS. Plaintiff's failure to respond to the argument may be considered by the Court as an admission that the motion has merit, pursuant to Local Rule 7(b)(2). The Court thus **GRANTS** the Government's motion to exclude Dr. Wright's opinion regarding Plaintiff's alleged CRPS.

The Court is not so inclined, however, regarding Dr. Wright's opinion on Plaintiff's alleged brachial plexopathy. When questioned as to how he arrived at his diagnosis of brachial plexopathy, Dr. Wright explained that he had reviewed the EMG and concluded that it was consistent with such a diagnosis:

> The EMG report was positive for involvement of the suprascapular nerve, the median nerve, the radial nerve, and the ulnar nerve. It was consistent with a C5-6, 7, 8, I think, nerve root abnormality. By understanding what's—the way this is done, that would be consistent with a brachial plexitis, brachial plexopathy.

Dkt. 72-4 at 32:2-16. He indicated that "the principal evidence for brachial plexopathy is the reinnervation pattern seen on the EMG." *Id.* at 11:7-13. Dr. Wright also noted that the EMG was evaluated by a neurologist "who has an extensive academic and clinical record," who reached the same conclusion. *Id.* at 17-20.

The Court finds that Dr. Wright's expert opinion on Plaintiff's alleged brachial plexopathy is admissible. In determining whether an expert's testimony is admissible, a court "must determine whether the expert's testimony reflects (1) scientific knowledge, and (2) will assist the trier of fact to understand or determine a material fact at issue." *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1227–28 (9th Cir. 1998). Dr. Wright's testimony on the issue reflects his medical expertise and is helpful to a trier of fact to understand the evidence. Whether it is well-supported goes to the weight of his testimony not its admissibility. The Court therefore **DENIES** the Government's motion to exclude Dr. Wright's testimony on Plaintiff's alleged brachial plexopathy.

ORDER – 7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### E.      Dr. Wright's Opinions on Causation

The Government asserts that Dr. Wright's opinions regarding the causal connection between Plaintiff's injuries and the collision should be excluded because "Dr. Wright failed to base his opinions that Plaintiff's medical conditions resulted from the collision on a factual, scientific, medical, or technical foundation or methodology." Dkt. # 71 at 11.  Plaintiff argues that Dr. Wright's causation opinions are based on "his review of the medical records and chronology, as well as the interview with Mr. Lo and his family." Dkt. # 81 at 9.  Plaintiff points to Dr. Wright's testimony that "it would be the circumstances of the injury, the car was totaled, and the fact that [Plaintiff] who is experiencing the pain, understands that that pain rose from the accident." *Id.*

As the Court has already determined, Dr. Wright does not have the requisite expertise or specialization to opine about Plaintiff's alleged hip injury, mental health conditions, or CRPS.  Consequently, Dr. Wright does not have a foundation from which to determine whether a causal connection exists between these alleged injuries and the motor vehicle collision.  Thus, his testimony on causation between these particular injuries and the collision is inadmissible.

However, with respect to the causal link between Plaintiff's other injuries and the collision, his testimony is admissible.  When asked whether he had applied any particular model or framework of causation in his determination of causation, Dr. Wright confirmed that he had.  Dkt. # 82-2 at 246:20-247:10.  He explained that he applied the three-step causation analysis developed by causation expert Michael Freeman. *Id.*  The Government here does not challenge the soundness of the methodology, but rather questions how vigorously Dr. Wright applied it here.  The Court, sitting as a factfinder in this case, admits Dr. Wright's testimony on causation between Plaintiff's alleged injuries that have not been excluded and the collision, "subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702." *Flores*, 901 F.3d at 1165.

ORDER – 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## V.   CONCLUSION

For the reasons stated above, the Court **GRANTS in part** and **DENIES in part** Defendant's motion to exclude.  Dkt. # 71.  The Court **STRIKES** Dr. Wright's supplemental report in its entirety.  The Court **EXCLUDES** the following opinions:

1.  Dr. Wright's opinions regarding the reasonableness and necessity of Plaintiff's medical bills;

2.  Dr. Wright's opinions regarding Plaintiff's alleged hip injury and mental health condition;

3.  Dr. Wright's opinions regarding Plaintiff's alleged Complex Regional Pain Syndrome; and

4.  Dr. Wright's opinions regarding the causation between Plaintiff's alleged hip injury, mental health condition, and Complex Regional Pain Syndrome.

It is so **ORDERED**.

DATED this 3rd day of November, 2021.

The Honorable Richard A. Jones
United States District Judge

ORDER – 9